E. G. ROBINSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 50302.   Promulgated July 28, 1933.

*Robert T. Jacob, Esq.*, for the petitioner.
*Owen W. Swecker, Esq.*, for the respondent.

#### OPINION.

SEAWELL: The respondent determined a deficiency in income tax of $3,597.28 against the petitioner for the year 1927.   In an amended

answer he prays to have petitioner's taxable income for that year increased in the amount of $3,638.27, due to the petitioner's alleged failure to report the entire proceeds from the sale of the stock of the Molalla Electric Co. during the year 1927.

The petitioner assigned two errors: (1) That the respondent failed or refused to compute the tax upon the profit realized from the sale of aforesaid stock upon the installment basis, and (2) that the respondent further erred in not giving petitioner "credit as a part of the cost in the form of paid-in surplus and for salary credited to this petitioner and not drawn by him."

The petitioner, a resident of Portland, Oregon, acquired in 1917 all the stock of the Molalla Electric Co. at a cost of $45,000 and shortly thereafter took full control of the corporation, being made president and general manager of the same at an authorized salary of $250 per month, which in 1921 was increased to $300 per month. In none of the years from 1917 to 1926, inclusive, with the exception of 1925, did the petitioner draw all the salary to which he was entitled. During the years following he withdrew on salary account as follows: in 1917, $1,918.95; 1918, $1,535.16; 1919, $903.90; 1920, $1,286.53; 1921, $2,830.85; 1922, $2,800; 1923, $2,785.87; 1924, $2,931.26; 1925, $3,979.60; and 1926, $3,325.08. During 1917 to 1921, inclusive the petitioner filed no income tax returns.

The books of the Molalla Electric Co. are lost. What additional light might be thrown on the issues herein by such books, if in evidence, is not fully disclosed by the record. No dividends were ever paid by the Molalla Electric Co. During the year 1923 the petitioner sold certain real estate for $1,400, and he testified that the amount was paid into the Molalla Electric Co. and used as its funds. "Life insurance money" in the amount of $1,598.22, owned by petitioner, was similarly used for and by said company, but in what year is not shown.

Before 1926 the petitioner kept no special account for himself. Money was put in bank and drawn out to pay the company accounts, the petitioner treating the company as his individual holding and not as a corporation.

In February 1927, petitioner sold the stock of the Molalla Electric Co. to the Portland Electric Power Co. for $87,500, and received $17,500 cash; four notes totaling $17,500, due March 1, 1928; four notes totaling $17,500, due March 1, 1929; four notes totaling $17,500, due March 1, 1930; and four notes totaling $17,500, due March 1, 1931. During the year 1927 petitioner purchased some real estate and traded the eight notes due March 1, 1928, and March 1, 1929, in the amount of $35,000, in on the property, which had a value at the

time of $45,000. The parties who accepted the notes on a $35,000 valuation insisted that petitioner endorse them as follows:

For value received I hereby guarantee payment of the within note, consent to any extension of time granted the maker, and waive protest, demand and notice of non-payment thereof, and in case suit or action is instituted upon this guaranty for the collection of the within note I promise to pay such sum as the court may adjudge reasonable as attorney's fees in such suit or action.

The notes were so endorsed.

The first error assigned—the failure of the respondent to compute the tax upon the profit realized from the sale of aforesaid stock upon the installment basis—the petitioner admits appears to be concluded against him by the Board's decision in *E. E. Chapman*, 19 B.T.A. 878, unless the determination therein is erroneous, which petitioner earnestly insists is a fact.

The facts and circumstances in the *Chapman* case, *supra*, and the instant case are so similar that there is not, in our opinion, any important or material difference that would make inoperative the principle applied in the *Chapman* case. The determination therein, being in our opinion correct and sound, is controlling herein on the issue now being considered and there is therefore no occasion or necessity for fully discussing the question and reviewing the authorities cited by petitioner's counsel.

The record shows that when the petitioner disposed of his Molalla Electric Co. stock in 1927 for $87,500, he received therefor $17,500 in cash and notes in the amount of $70,000. It is further shown that the petitioner within the same year or taxable period purchased real estate of the value of $45,000 and in part payment for said property transferred eight of aforesaid notes, which were accepted by the seller at their face value as $35,000 cash, with the result that petitioner received in that taxable period the aforesaid $17,500 in cash and real estate or interest therein of the value of $35,000, the two constituting an " initial payment " within the meaning of section 212 (d) of the Revenue Act of 1926.

The petitioner, having in said taxable period received in cash and property as initial payment more than one fourth the price at which he sold his Molalla Electric Co. stock, is not entitled, in our opinion and we so determine, to have his tax on the profit computed on the installment basis, as contended by him.

We are further of the opinion and hold that the refusal of several banks to purchase or discount the notes received by petitioner in part payment for his stock and the refusal of the seller of the real estate to petitioner to accept any of said notes at their face value as so much cash unless they were endorsed and their payment guaranteed by petitioner does not show that the notes were not worth their face

value. The petitioner testified he thought the notes were good and would be paid at their maturity, otherwise he would not have accepted them. There is no evidence indicating they were not paid at maturity.

When a taxpayer endorses with recourse and guarantees payment of a note, he is not thereby relieved from reporting the full amount received in exchange for the note. *Packard Cleveland Motor Co.*, 14 B.T.A. 118.

The petitioner's second and only other assignment of error is that the respondent did not give petitioner credit, as a part of the cost of his Molalla Electric Co. stock, in the form of paid-in surplus and for salary credited to but not drawn by him.

In the brief filed in petitioner's behalf it is insisted that, as he owned the Molalla Electric Co., the $1,400 which he received from the sale in 1923 of certain property and the $1,598.22 which he received from a life insurance policy, both sums being paid or contributed to that company from his personal funds and not returned to him in dividends or otherwise, the total amount thereof, $2,998.22, should be added to and considered a part of the original cost of his aforesaid stock. The petitioner likewise contends that undrawn portions of his salary, covering approximately 1917 to 1927, inclusive, and amounting to $10,202.80, should also be treated as a part of the cost ($45,000) of the stock and the aggregate amount, $58,201.02, should in the circumstances of the case constitute the correct cost of said stock, which was sold in 1927 for $87,500. The record, however, does not, in our opinion, justify the claims made by the petitioner.

The petitioner admitted he filed no income tax returns for 1917 to 1921, inclusive, and thereafter his personal income was reported on the basis of actual receipts and disbursements and did not include the undrawn portions of his salary.

The petitioner was required to make and did make reports for the Molalla Electric Co. to the Public Utilities Commission of Oregon, and the same are in evidence but do not show that the $1,400 received by the petitioner from the sale of certain real estate in 1923 or the $1,598.22 which he received from a life insurance policy were invested in the business of the Molalla Electric Co. The evidence also fails, as before stated, to disclose the year in which the petitioner received the $1,598.22 from a life insurance policy or paid same to the Molalla Electric Co. An analysis of the surplus of the Molalla Electric Co., based on reports made to the public utilities commission and other available evidence in the case, while not as satisfactory as might be desired, does indicate that instead of the petitioner furnishing additional capital to the Molalla Electric Co. during the years 1922 to 1926, inclusive, there was for such period an actual withdrawal from the capital of the company.

The respondent seeks through an amended answer to have petitioner's net income for 1927 increased $3,638.27 because of the alleged failure of the petitioner to report the entire proceeds from the sale of his Molalla Electric Co. stock. To sustain such allegation respondent adduced certain evidence tending to show that in addition to the $87,500 aforesaid the petitioner received as a part consideration for the sale of his stock various amounts aggregating more than $3,000. The evidence relative to such allegation of respondent, however, is confusing and conflicting and upon the whole does not, in our opinion, sufficiently sustain respondent's assertion.

After carefully considering the entire record, we find and hold that the net sale price of petitioner's Molalla Electric Co. stock was $87,500, and that the petitioner realized a profit or gain of the difference between that amount and what we find and hold was the cost of such stock; viz., $45,000.

We are, therefore, of the opinion that the respondent did not err in his original determination of the deficiency and the same is approved.

*Judgment will be entered for the respondent.*