JOE D. BRANHAM AND BLANCHE M. BRANHAM, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2956-67. Filed October 28, 1968.

*Donald P. Moyers* and *William A. Goffe*, for the petitioners.
*Robert S. Leigh*, for the respondent.

FAY, *Judge:* Respondent determined a deficiency of $66,666.84 in petitioners' income tax for the taxable year ended June 30, 1962.

The sole issue is whether petitioner Joe D. Branham "disposed of" certain installments due him under a promissory note within the purview of section 453(d)(1).[1]

### FINDINGS OF FACT

Some of the facts were stipulated. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference.

Joe D. Branham and Blanche M. Branham are husband and wife. They filed a Federal joint income tax return on the cash basis of accounting for the taxable year ended June 30, 1962, with the district director of internal revenue, Oklahoma City, Okla. They were legal residents of Tulsa, Okla., when they filed the petition in this case. Because Blanche M. Branham is a party to this case only by virtue of filing a joint return with her husband, the latter is hereinafter referred to as petitioner.

On September 30, 1960, petitioner was a stockholder of Sand Springs Bottling Co. (hereinafter referred to as Sand Springs). Sand Springs was incorporated on April 20, 1931, under the laws of Oklahoma. It was organized for the purpose of bottling and selling soft drinks. It engaged in such business until November 30, 1960.

On September 30, 1960, petitioner and the other stockholders of Sand Springs entered into a written agreement to sell all the outstand-

---

[1] All statutory references are to the Internal Revenue Code of 1954.

ing stock of Sand Springs to certain stockholders of Equidyne Industries, Inc. (hereinafter referred to as Equidyne), an Oklahoma corporation. The total purchase price was $2,015,960. Petitioner was to receive $1,172,610 payable as follows: $272,610 in cash and a promissory note for $900,000. The note was to be paid in installments of $90,000 per year beginning on November 5, 1961. The note was to bear interest of 6 percent per annum payable semiannually on May 5 and November 5. Both interest and principal were to be payable at the First National Bank & Trust Co. of Tulsa (hereinafter referred to as the bank). The note was to be secured by a second real estate mortgage on the land and buildings of Sand Springs, a first chattel mortgage on the equipment of Sand Springs, and a pledge of the makers' stock in Pepsi-Cola Bottling Co. of Tulsa, Okla., Inc. (hereinafter referred to as Pepsi-Cola), an Oklahoma corporation.

Pepsi-Cola was organized on October 27, 1960, as a wholly owned subsidiary of Equidyne. On October 28, 1960, the right to purchase all the Sand Springs stock was assigned to Pepsi-Cola.

On November 5, 1960, the agreement for the purchase of the Sand Springs stock was executed. The note for $900,000 (hereinafter referred to as the Pepsi note) was delivered to petitioner.

Also on November 5, 1960, petitioner and the other sellers entered into a stock pledge and escrow agreement with Equidyne. The agreement provided that the bank would hold all the stock of Pepsi-Cola as security for the payment of the $900,000 Pepsi note to petitioner and the notes to the other sellers. The agreement also contained, *inter alia*, the following:

The parties hereto agree that upon the payment of each installment of the aforesaid promissory notes, [the bank] shall release that portion of all of said stock pledged hereunder in the same proportion that the payment bears to the total indebtedness evidenced by said promissory notes * * *

On December 5, 1961, each of petitioner's three daughters, Betty Lou Ashworth, Margaret Wilson, and Joellen d'Avignon (hereinafter referred to as Betty Lou, Margaret, and Joellen, respectively), owned 162 shares of the stock of Seven-Up Bottling Co. of Tulsa (hereinafter referred to as Seven-Up).

On December 5, 1961, petitioner, Margaret, and Joellen entered into a written agreement under which petitioner agreed to purchase each daughter's Seven-Up stock for $75,000. The purchase price was to be paid in four annual installments of $3,750 to each daughter beginning December 1, 1962, and six annual installments of $10,000 to each daughter beginning December 1, 1966. The deferred payments bore interest of 6 percent per annum payable semiannually. The payments were evidenced by promissory notes of petitioner. Petitioner delivered the notes concurrently with the execution of the agreement

on December 5, 1961. As collateral security for the consideration of $75,000 to each daughter, petitioner pledged payments on the Pepsi note due on November 5, 1970, and November 5, 1971.[2] The portion of the agreement concerning collateral security provided as follows:

It is agreed, as part of the consideration hereof, that [petitioner] shall deposit with [the bank] two (2) promissory notes due from Pepsi Cola Bottling Company of Tulsa as collateral security for the payment of the said sum of $75,000.00 each to Margaret Wilson and Joellen d'Avignon together with interest thereon. These said notes mature Nov. 5, 1970 and 1971. It is agreed that any interest or income or increment from said two promissory notes of $90,000.00 due from Pepsi Cola Bottling Company of Tulsa shall be paid to [petitioner] so long as he is not in default in payment for the said stock which he is purchasing from the said Margaret Wilson and Joellen d'Avignon;

Petitioner did not execute a written assignment to the daughters of the two installments of the Pepsi note.

The promissory notes which petitioner gave Margaret and Joellen pursuant to their agreement of December 5, 1961, contained, *inter alia*, the following:

To secure the payment of this note * * * the undersigned [petitioner] [has] pledged and delivered * * * the following collateral:

Two promissory notes due from Pepsi-Cola Bottling Company of Tulsa in the amount of $90,000.00 each, one maturing November 5, 1970, and the other maturing November 5, 1971. These notes are held in escrow by the [bank]. * * *

On December 15, 1961, petitioner and Betty Lou entered into a written agreement under which petitioner agreed to purchase her Seven-Up stock for $120,000. The purchase price was to be paid in six annual installments of $20,000 beginning on January 15, 1962. The deferred payments bore interest of 6 percent per annum. The payments were evidenced by a promissory note of petitioner. Petitioner delivered the note concurrently with the execution of the agreement on December 15, 1961. As collateral security for the consideration of $120,000, petitioner pledged the payment on the Pepsi note due on November 5, 1966. The portion of the agreement concerning collateral security provided in part as follows:

As collaterial [sic] security for the obligation herein, second party [petitioner] does hereby agree to make an immediate assignment to first party [Betty Lou] of all his right, title and interest in and to the following:

A.—Payment due on November 5, 1966 in sum of $90,000.00 payment on a promissory note dated November 5, 1960 from Pepsi Cola Bottling Company of Tulsa, Inc. * * *

It is agreed that any interest or increment arising from said $90,000.00 payment aforesaid shall be kept and retained by second party so long as said second party is not in default in payments above mentioned to first party. * * *

The pledge was evidenced by a written assignment dated December 15, 1961. The assignment was delivered to the bank on December 19, 1961.

[2] There was evidently a mistake in drafting this portion of the agreement. The final installment on the Pepsi note was due in 1970, not 1971.

On January 15, 1962, petitioner paid Betty Lou the $20,000 installment and the $600 accrued interest due on that date. Petitioner deducted the interest on his Federal income tax return for the taxable year ended June 30, 1962.

On April 23, 1962, petitioner and Betty Lou amended their agreement of December 15, 1961. In the amended agreement, Betty Lou waived the installment payments due to her in the years 1963 to 1967, inclusive, and agreed to accept a single payment on November 5, 1969. The amendment also substituted the installment of the Pepsi note due on November 5, 1969, for the previously pledged installment due on November 5, 1966. Petitioner and Betty Lou further agreed that the semiannual interest payable on the 1969 installment of the Pepsi note would be payable to Betty Lou. Petitioner directed the bank to pay to Betty Lou the interest and principal on the 1969 installment when collected on behalf of petitioner. This direction was worded as follows:

First Party [petitioner] hereby authorizes and directs the [bank] to pay said Second Party [Betty Lou] the interest on the $90,000.00 installment of said [Pepsi] note as it matures and to pay over to Second Party the proceeds of said installment of $90,000.00 when collected by it in behalf of First Party. The proceeds of said note installment and interest thereon shall be in full settlement of all payments due the Second Party for years 1963 to 1967, both inclusive under said Contract Exhibit A.

On April 24, 1962, petitioner, Margaret, and Joellen amended their agreement of December 5, 1961. They increased the consideration to each daughter from $75,000 to $90,000. The daughters waived the installments due them on December 5 of each year 1962 through 1971 and canceled the promissory notes dated December 5, 1961. In lieu thereof, they each accepted a promissory note for $90,000 payable on November 5, 1970. The new notes bore interest of 6 percent per annum payable semiannually. Petitioner and his daughters also substituted the installment of the Pepsi note due on November 5, 1968, for the previously pledged installment due on November 5, 1971.[3] Petitioner agreed to assign to Margaret and Joellen the installments of the Pepsi note due on November 5, 1968 and 1970, as collateral security for the consideration of $90,000 to each daughter. Pursuant to this provision, petitioner on May 8, 1962, executed an assignment of the 1968 and 1970 installments of the Pepsi note. The assignment was worded as follows:

### ASSIGNMENT

KNOW ALL MEN BY THESE PRESENTS:

That, for value received, I. J. D. BRANHAM, of Tulsa, Oklahoma, do hereby assign unto MARGARET WILSON and JOELLEN D'AVIGNON, share and

---

[3] In the original agreement, petitioner pledged installments due in 1970 and 1971. As to the latter, see fn. 2, *supra*. As a result of the amendment to the agreement, the pledged installments were those due in 1968 and 1970.

share alike, the installments in sum of $90,000.00 each, due November 5, 1968 and November 5, 1970, on that certain Promissory Note dated November 5, 1960, of the Pepsi Cola Bottling Company of Tulsa, Inc., * * * in the original sum of $900,000.00, which Note is held by the [bank] under Escrow Agreement, together with the right to ask, demand and collect the same, or any part thereof, to sue for and collect said installments with interest thereon, but at their own cost.

The bank paid interest which it received on installments of the Pepsi note as follows:

| Year | Betty Lou | Joellen | Margaret |
|------|-----------|---------|----------|
| 1962 | $2,692.60 | $2,692.60 | $2,692.60 |
| 1963 | 5,400.00 | 5,400.00 | 5,400.00 |
| 1964 | 5,414.79 | 5,414.79 | 5,414.80 |
| 1965 | 5,400.01 | 5,400.00 | 5,400.00 |
| 1966 | 5,400.00 | 5,400.00 | 5,400.00 |
| 1967 | 5,414.79 | 5,414.80 | 5,414.79 |

Petitioner never directed the bank to transfer any of the collateral securing the Pepsi note. Nor did he ever advise the bank that he had assigned any of such collateral.

In his Federal income tax return for the taxable year ended June 30, 1962, petitioner elected to report his gain from the sale of his Sand Springs stock under the installment method of reporting provided for in section 453.[4] He did not, however, report any income as a result of transferring some of the installments due on the Pepsi note.

In his statutory notice of deficiency for the taxable year ended June 30, 1962, respondent treated the transfer of some of the installments due on the Pepsi note as a disposition within the purview of section 453(d)(1). He increased petitioner's income to reflect this disposition.

OPINION

The issue is whether petitioner disposed of the 1968, 1969, and 1970 installments of the Pepsi note within the purview of section 453(d) (1).[5] Respondent's position is that in substance petitioner used the three installments to purchase his daughters' Seven-Up stock. It fol-

---

[4] It is not clear from the record why petitioner elected sec. 453 in this return when the sale was consummated on Nov. 5, 1960.

[5] SEC. 453. INSTALLMENT METHOD.

(d) GAIN OR LOSS ON DISPOSITION OF INSTALLMENT OBLIGATIONS.—

(1) GENERAL RULE.—If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and—

(A) the amount realized, in the case of satisfaction at other than face value or a sale or exchange, or

(B) the fair market value of the obligation at the time of distribution, transmission, or disposition, in the case of the distribution, transmission, or disposition otherwise than by sale or exchange.

Any gain or loss so resulting shall be considered as resulting from the sale or exchange of the property in respect of which the installment obligation was received.

lows, he contends, that petitioner disposed of the installments. Petitioner's position is that in substance, as well as in form, he merely pledged the three installments to secure the notes he made to purchase the Seven-Up stock. He contends further that a pledge is not a section 453(d)(1) disposition.

From a review of all the evidence herein, we conclude that petitioner has not overcome the presumptive correctness of respondent's position. Indeed the evidence tends in many instances to support respondent's position rather than refute it. Under the final contracts relating to the Seven-Up stock, petitioner owed his daughters principal and interest in the exact amounts that were due him under the three installments of the Pepsi note here in question. Furthermore, the terms governing petitioner's payments to his daughters were exactly the same as the terms of the three installments. Apparently because of this coincidence of terms and amounts, petitioner directed the bank to pay directly to his daughters the interest and principal on the three installments when collected. Finally, petitioner's assignment to Margaret and Joellen of the 1968 and 1970 installments of the Pepsi note was absolute on its face. Facts such as these strengthen our conviction that petitioner has failed to overcome the presumptive correctness of respondent's determination.[6] We therefore conclude that petitioner exchanged the 1968, 1969, and 1970 installments of the Pepsi note for his daughters' Seven-Up stock. It follows that petitioner disposed of the three installments within the purview of section 453(d)(1). See *Robinson* v. *Commissioner*, 73 F.2d 769 (C.A. 9, 1934), reversing on another point 28 B.T.A. 788 (1933).

Petitioner relies on *Prescott Corp* v. *United States*, an unreported case (D. Oreg. 1964, 14 A.F.T.R. 2d 5858, 64–2 U.S.T.C. par 9879). After summarily disposing of a statute of limitations problem in that case, the court dealt with the issue presented herein as follows:

I find that the transactions with the Portland Federal Savings & Loan Association, involving the 130 conditional sales contracts, did not constitute a sale or disposition of installment obligations within the meaning of Section 453(b) [perhaps 453(d)] of the Internal Revenue Code of 1954 and that plaintiff was not required to report $269,888.58 as the unreported gain on these contracts. I find that these transactions were loans to the plaintiff and that the parties treated them and intended them to be loans; that the assignment of the contracts and the delivery of the deeds were made solely for the purpose of securing the loans; and that plaintiff was entitled to report the gain on these contracts under the installment method of reporting.

There are not enough facts reported in the case for us to determine whether we should follow it.

---

[6] See Jones, "A Tax-Trap for the Unwary: The Disposition of Installment Obligations," 29 Montana L. Rev. 46. See also Sanders, "Disposition of Installment Obligations," 9th Ann. U. So. Calif. Tax Inst. 758–759 (1957); Eidenberg, "Problems Arising Out of Discount Obligations," 19th Ann. N.Y.U. Inst. 1323–1324 (1961).

Petitioner makes an argument concerning his transfer of the 1966 and 1971 installments of the Pepsi note. He points out that respondent did not determine that these transfers were section 453(d)(1) dispositions. Petitioner argues that if he "disposed of" the 1968, 1969, and 1970 installments, he also "disposed of" the 1966 and 1971 installments. He concludes that respondent's failure to assert a deficiency with respect to the 1966 and 1971 installments demonstrates an error in respondent's determination with respect to the 1968, 1969, and 1970 installments.[7]

The 1966 and 1971 installments are not in issue. While respondent might have asserted that these installments were "disposed of," he chose not to do so. Because he did not press the claim, we need not consider its merits. We note, however, that there are many important and obvious differences between the original contracts and the amended ones. The terms of the original contracts would of course be very meaningful in deciding whether petitioner "disposed of" the 1966 and 1971 installments.

Petitioner makes an argument concerning the phrase "installment obligation" in section 453(d)(1). He contends that "installment obligation" means "note." He further contends that a transfer of less than all installments of a note is not a transfer of the note, or the installment obligation. He concludes that such a transfer cannot be a section 453(d)(1) disposition.

Considering all the facts and circumstances herein, we think there were 10 "installment obligations" in any sense of that phrase which is important in construing section 453(d)(1).[8] While there was apparently only 1 Pepsi note, some of the documents involved herein read as if there were 10 notes. For example, the 1961 contract between petitioner, Margaret, and Joellen contains the following language:

It is agreed, as part of the consideration hereof, that [petitioner] shall deposit with [the bank] two (2) promissory notes due from Pepsi Cola Bottling Company of Tulsa as collateral security for the payment of the said sum of $75,000.00 each to Margaret Wilson and Joellen d'Avignon together with interest thereon. These said notes mature Nov. 5, 1970 and 1971. It is agreed that any interest or income or increment from said two promissory notes of $90,000.00 due from Pepsi Cola Bottling Company of Tulsa shall be paid to [petitioner] so long as he is not in default in payment for the said stock which he is purchasing from the said Margaret Wilson and Joellen d'Avignon;

---

[7] In connection with this argument, petitioner mentions that respondent's statutory notice does not specify which of the five installments are in issue. Petitioner does not, however, request us to shift the burden of proof because of the omission. We think there are good reasons for petitioner not to make such a request. He did not allege surprise with respect to respondent's omission. Nor did he ask for a continuance. Furthermore, it is clear from the thorough presentation in petitioner's briefs that his counsel was not misled as to the issue presented by the pleadings. See *Manuel D. Mayerson*, 47 T.C. 340 (1966).

[8] Aside from this, it is arguable that the phrase "otherwise disposed of" in sec. 453(d)(1) includes a partial disposition of a single "installment obligation." However, we do not need to pass on this argument.

Furthermore, petitioner treated the installments of the Pepsi note as if each was a separate obligation. He assigned one to Betty Lou and two to Margaret and Joellen, and he apparently retained the rest.

Petitioner makes an argument concerning the phrase "disposition of" in section 1001(a).[9] He contends that this phrase and the phrase "disposed of" in section 453(d)(1) should receive the same construction. He further contends that a pledge of property as collateral is not a disposition within section 1001(a). He concludes that to pledge an installment obligation is not to dispose of it within section 453(d)(1).

The difficulty with the argument is that it is predicated upon a pledge of property. We conclude above that petitioner did not in substance pledge the 1968, 1969, and 1970 installments of the Pepsi note. Because of this conclusion, petitioner's section 1001(a) argument is not germane.

We therefore hold that petitioner disposed of the 1968, 1969, and 1970 installments of the Pepsi note within the purview of section 453(d)(1).

*Decision will be entered under Rule 50.*

---

[9] SEC. 1001. DETERMINATION OF AMOUNT OF AND RECOGNITION OF GAIN OR LOSS.

(a) COMPUTATION OF GAIN OR LOSS.—The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 1011 for determining gain, and the loss shall be the excess of the adjusted basis provided in such section for determining loss over the amount realized.