**YANCEY BROS. CO.**

v.

**UNITED STATES of America.**

**Civ. A. No. 12150.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Sept. 18, 1970.

King & Spalding, Atlanta, Ga., for plaintiff.

Thomas A. Flannery, U. S. Atty., Johnnie M. Walters, Department of Justice, Washington, D. C., for defendant.

## STATEMENT OF THE CASE

HENDERSON, District Judge.

Yancey Bros. Co. in this action seeks to recover amounts of taxes and interest paid to the District Director of Internal Revenue, Atlanta, Georgia, which amounts it alleges were erroneously and illegally assessed and collected from it. Only the issue of defendant's liability is to be established at this point in the proceedings. As to the actual amount of the recovery, the parties have stipulated that they:

> \* \* \* will prepare computations of the amount of taxes and interest to be refunded, if any. Should the parties disagree as to the correct amount of such refund, the matter will be submitted to the court for a determination.

The case came on for trial by the court without a jury and was submitted for decision on the pleadings supplemented by the pre-trial order, stipulations of facts, and briefs filed by plaintiff and defendant. The court directed the parties to submit written arguments and proposed findings of fact and conclusions of law. The parties have complied with that direction and the case is now ready for decision.

The taxpayer contends that it did not dispose of its notes receivable (representing balance of purchase price under its sales contracts with purchasers), but that it borrowed money from various banks and finance companies, giving demand notes for the same and pledging as security for said notes those which it held executed by its purchasers.

Section 453 of the Internal Revenue Code of 1954,[1] provides that a taxpayer who regularly sells personal property on the installment basis may defer the reporting of realized gain until such time as the deferred cash payments are actually received. However, if prior to the receipt of all of the installments due under the original agreement, the taxpayer sells or otherwise disposes of the obligation, within the meaning of Section 453(d) (1), gain is immediately recognized. The basic issue to be decided here is whether under the provisions of Section 453(d) (1), a sale or disposition occurred when the taxpayer pledged its installment obligations as collateral on its own demand loans.

The government on the other hand contends that the transactions come within the provisions of the above statute for the reason that the notes receiv-

[1]. (d) *Gain or Loss on Disposition of Installment Obligations.*

(1) General rule.—If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and—

(A) the amount realized, in the case of satisfaction at other than face value or a sale or exchange, or

(B) the fair market value of the obligation at the time of distribution, transmission, or disposition, in the case of the distribution, transmission, or disposition otherwise than by sale or exchange.

Any gain or loss so resulting shall be considered as resulting from the sale or exchange of the property in respect of which the installment obligation was received.

able belonging to the taxpayer were either "sold or otherwise disposed of".

Since this court finds in favor of the taxpayer on the basic issue stated above, it will not be necessary to consider other issues in the case.

## FINDINGS OF FACT

(1) Taxpayer in the fiscal years 1963 and 1964 made its federal income tax returns on the accrual basis. The Secretary of the Treasury assessed additional tax in the amount of $239,586.21 for 1963 and $139,484.93 for 1964. The additional tax was paid and taxpayer duly filed a claim for refund.

(2) Taxpayer was engaged in the business of selling tractors and other equipment, generally on the installment basis evidenced by promissory notes with finance charges included in the total contract price and secured by conditional sales contracts. Having been advised by its counsel and auditors that in their opinion the installment sales method of reporting income could be utilized in connection with demand loans secured by pledges of installment paper, taxpayer with consent of the financial institutions obtained a change from the method then being followed, viz: selling its notes receivable at a discount and in lieu thereof borrowed money on its own promissory notes payable on demand, securing the notes with the notes and conditional sales contracts from its customers.

(3) Portions of the Stipulation of Facts concerning the loan operations[2] are as follows:

The operational facts relating to demand loans and discounting are as follows:

A. When utilizing demand loans, Taxpayer pursuant to agreement entered between it and Lenders maintains records on all customer accounts pledged as collateral, which includes a collection policy utilizing coupon books furnished by the Taxpayer to the customer; one additional person was employed to handle the bookkeeping and administrative records.

H. When demand loans are utilized, Taxpayer has the right to grant the customer an extension of time in which to make payment. This extension is granted without consulting the lender. In such cases, additional finance charges are collected from the customer by Taxpayer.

The parties stipulate (see Paragraph 14 of the Stipulation) that

The actual transaction between Taxpayer and the financial institutions is handled as follows, depending on whether demand loans or discounting is involved:

A. When transactions involve a demand loan, the indebtedness is evidenced by a demand promissory note, on the lender's usual form, signed by Taxpayer on which it is the sole obligor. Interest on said demand note, payable monthly and computed daily, is due on the principal amount remaining unpaid. From time to time, Taxpayer, to maintain the 105% collateral ratio, will request consolidation of a group of notes into a single note and borrow additional money.

E. On all customer's notes utilized as collateral to secure a demand loan, Taxpayer continued to pay the Georgia Intangibles Tax, and ad valorem tax. No such tax was paid by taxpayer on customer's notes discounted.

The parties also stipuate (see Paragraph 15 of the Stipulation) that

When a customer is unable to meet his payments, he may arrange an extension of time to pay. Fees and late charges are collected as follows:

A. On customer paper used for demand loans, all such extension fees and late charges, as computed by Taxpayer, are collected by and belong to Taxpayer. Taxpayer's practice is, thereafter, to notify the lender of the

---

2. The stipulation provides that "terms of debt and finance are used for descriptive purposes only and without prejudice to the contentions of either parties."

extension terms and to forward such fees to reduce its demand loan.

The parties stipulate (see Paragraph 17 of the Stipulation) that

In the event a customer decides to prepay his obligation, the procedure is as follows:

A.   Under a demand loan, the customer deals directly with Taxpayer in negotiating the amount that is required to extinguish the indebtedness. Taxpayer takes such amount, when received from the customer, and remits to the lender the sum necessary to equal the face amount of the unpaid obligation.

The parties stipulate (see Paragraph 18 of the Stipulation) that

The amount of money Taxpayer receives and the interest it pays under the two arrangements is as follows:

D.   When the interest rates have been increased, lenders, in demand loan situations, have required the interest rate to Taxpayer to increase correspondingly. In discount situations, the discount charge could not be changed during the life of the discounted contract.

(4) While stipulating the foregoing facts to be correct the government points out the following:

(1) When the discounting procedure was followed, plaintiff received from 94% to 95.5% of the face amount of the customer's note. The plaintiff receives 96.5% of the face amount when the customer's note is endorsed as security on plaintiff's demand loan.

(2) In every agreement, the bank or finance company reserved the right to make collections on customer's promissory note. In actual practice the plaintiff, pursuant to the bank or finance company's discretion, collects most of the installment obligations, but the collections are held by the plaintiff as property of the bank or finance company. All such collections when received by the lending institutions are credited on the note given by plaintiff.

(5) Since the taxpayer began the procedure of making loans from the lenders and pledging its notes receivable as security therefor, taxpayer did continue in certain instances to sell and transfer its notes receivable to the lending institutions at a discount, and such transactions are not involved in this case.

## CONCLUSIONS OF LAW

(1) The court has jurisdiction of the subject matter and the parties to the case.

(2) As supporting its contention that the transaction here involved constituted merely a pledge and not a "sale or disposition" of the notes receivable held by it, taxpayer cites United Surgical Steel Company, Inc. v. Commissioner, 54 T.C. —— #116, filed June 9, 1970. In that case the Tax Court found that there was no "disposition" of installment obligations under the facts there involved. In that case the petitioner and its guarantors entered into a written agreement with the bank pursuant to which the bank agreed to extend a line of credit up to a maximum of $850,000.00. The petitioner executed a note payable to the bank for the full amount of its authorized borrowings; the note was described as a draw note by lender. Pursuant to the terms of the loan agreement, the petitioner assigned its installment obligations to the bank and became entitled to borrow up to 88% of the face amount of said obligation. In case of a default on any installment obligation the petitioner was required to reduce its amount of loan with the bank by an equal amount as the default. The bank did not realize any income from the installment obligations but only realized interest charges measured by the actual balance owing by the petitioner. The petitioner continued to handle all collections and otherwise to service its customers. All collections upon the installment notes were made by the taxpayer and remitted to the bank and each week the amount of such receipts were credited by the bank to the taxpayer on the taxpayer's note (this was done in the in-

stant case on a monthly and not weekly basis.)[3]

(3) In the case of Burford-Toothaker Tractor Company, Inc. v. United States of America, 262 F.2d 891 (5th Cir. 1959), there was involved the question (arising under another statute) whether money loaned by a bank to a taxpayer was part of the taxpayer's "borrowed capital" for purpose of excess profits tax even though the taxpayer transferred it's customer's conditional installment sales contracts and promissory notes to the bank, as against the contention the customer's conditional sales contracts were sold by the taxpayer to the bank.

In an exhaustive discussion of the matter by Chief Judge John R. Brown it was ruled that the transaction was a loan and not a sale, despite the fact relied upon by the government that the taxpayer did not, with respect to this particular credit advance, execute its own note. The court pointed out that under the

> [P]ractical nature of the transaction by which money was loaned, not paid by the Bank, the Taxpayer became the Bank's debtor, not vendor, and both treated it as the lending of money, not the sale and purchase of commercial paper. (see p. 894).

There the taxpayer had an open line of credit for $150,000.00 which

> [W]as on the Taxpayer's note bearing 4% interest.

> As Taxpayer sold a machine on time, the conditional sales contract was assigned, and the accompanying promissory note of the customer was endorsed with recourse. The full face amount of the customer's note which bore 6% interest was immediately credited to Taxpayer's general checking account so that it had the full and immediate use of this money. [That

fact does not appear in the instant case].

If the customer defaulted taxpayer paid the note in full. It was pointed out that the taxpayer likewise treated the pledge of the notes as security. The court stated:

> For here the uncontradicted facts show that neither party considered or treated it as one of a simple negotiation by endorsement without more. The Bank looked to Taxpayer alone for prompt and timely payment. It was Taxpayer's obligation under the arrangement not merely to pay in the event of the maker's default as its engagement as an endorser implied. Its obligation was to pay when and as due and totally without regard to whether the maker was or was not in default, technical or substantial, or whether Taxpayer had yet received all or any part of the current payment from the maker.

The court stated:

> The transaction could have, of course, taken the pattern of a sale of the installment contracts, * * *. But it did not, and the result is not to be determined as though it had.

For other rulings tending to support contentions of the petitioner see Town and Country Food Company, Inc. v. Commissioner of Internal Revenue, 51 T.C. 1049; and Prescott v. United States, 64-2 U.S.T.C. 9879 (Dist.Crt. of Or.1964).

(4) Finally, three factors present in the instant case make it apparent that taxpayer neither sold nor otherwise disposed of its installment obligations. The first concerns the economic impact of the Georgia Intangibles Tax, Ga.Code Ann. § 92-110, which provides in pertinent part that:

> [T]axes shall be charged against the *owner* of property * * *. (Emphasis added.)

---

3. The case just cited made reference to revenue ruling 65-185 (Revenue Rulings p. 999) which would appear to support the contentions of the government in this case, but pointed out material differences in the case sub judice requiring a different result. The facts in the instant case, however, are not materially different from the facts before the Tax Court in the case of *United Surgical Steel Company*, supra.

Accordingly, the owner of the customers' notes used as collateral would be legally obligated to pay the required Intangibles Tax. Ga.Code Ann. §§ 92–113, 118. As previously noted, taxpayer continued to pay the Georgia Intangibles Tax on all customers' notes used as security for taxpayer's demand loans. No such tax was paid by the taxpayer on customers' notes utilized in discounting.

The second concerns the terms of the notes given by taxpayer to lenders in demand loan situations. When effectuating a demand loan, taxpayer executed a demand promissory note on the lender's usual form. These demand loans were effectuated at simple interest rates, payable monthly on the outstanding daily balance of taxpayer's note. Manifestly, in demand loan situations, taxpayer was subject to the vicissitudes of the "money market". For, when interest rates increased, lenders required the interest rate to taxpayer to increase correspondingly. This fact of economic life is to be sharply distinguished from the economics of discounting. In the latter instance, the discount charged could not be changed during the life of the discounted contract.

Thirdly, note should be taken of that portion of taxpayer's loan agreements requiring it to maintain a ratio of collateral to debt of not less than 105%. From time to time, the ratio of collateral to debt became greater than 105%. If taxpayer needed to borrow more money, under such circumstances, it could request consolidation of a group of notes into a single note and would borrow additional money without putting up additional collateral. Certainly, if taxpayer had sold or otherwise disposed of the customers' notes, no such access to additional money would exist. cf. Woodsam Associates Inc. v. Commissioner of Internal Revenue, 198 F.2d 357 (2nd Cir. 1952).

(5) For the reasons set forth above, the court finds that a taxable event does not occur when taxpayer utilizes its customers' installment obligations as security for its demand loans.

To the extent that any findings of fact set forth in this order are deemed to be conclusions of law or to the extent that any of the foregoing conclusions of law are deemed to be findings of fact, the same shall be deemed conclusions of law or findings of fact as the case may be.

Counsel are directed to submit to the court computations of the amount of taxes and interest to be refunded in accordance with the foregoing findings of fact and conclusions of law and a proposed judgment of the court within ten (10) days of the date of the filing of this order. Upon approval thereof by the court, judgment shall be entered accordingly.

So ordered this the 18th day of September, 1970.