MILTON T. SCHAEFFER AND JOAN H. SCHAEFFER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Schaeffer v. Commissioner
Docket No. 9266-76.
United States Tax Court
T.C. Memo 1981-27; 1981 Tax Ct. Memo LEXIS 711; 41 T.C.M. (CCH) 752; T.C.M. (RIA) 81027; January 27, 1981. William H. Lawson, Jr., for the petitioners. *712 Wesley J. Lynes and Joel Gerber, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency in petitioners' 1973 Federal income tax in the amount of $ 92,662.95. He further determined an addition to petitioners' tax under section 6651(a)(1), Internal Revenue Code of 1954, [1] in the amount of $ 4,633.15. After concessions (including respondent's concession with regard to the negligence penalty), the sole issue remaining for our decision is whether petitioner Milton T. Schaeffer (herein petitioner) distributed, transmitted, sold, or otherwise disposed of a certain installment obligation in 1973 such that theretofore unrecognized gain was recognized in 1973 under the provisions of section 453(d). FINDINGS OF FACT Most of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners filed a joint Federal income tax return for their taxable year 1973 with the Director of the Internal Revenue Service Center, *713 Memphis, Tennessee. At the time they filed their petition herein, petitioners resided in Germantown, Tennessee. During 1973, petitioner and his brother, Joseph H. Schaeffer, Jr. (herein Joseph), each held a one-half interest in the Southeastern Company (herein Southeastern), a partnership. In 1973, Southeastern sold 17 acres of unimproved land to Chuck Hutton Company (herein Hutton Co.) and received the sales price in the form of cash plus a promissory note in the amount of $ 788,654 payable to the order of petitioner and Joseph. The note (herein the Hutton note) was dated October 10, 1973, and was secured by a deed of trust on some property in Shelby County, Tennessee. The principal amount of the note was payable to petitioner and Joseph in three equal installments due January 5 of 1974, 1975, and 1976. Interest accrued and was payable as specified by the following language of the Hutton note: Interest shall be computed and payable quarterly on the tenth (10th) day of the month after which each respective quarter ends. The rate of interest to be paid shall be the prime rate in effect in Memphis, Tennessee, on the first (1st) day of each quarterly period. the rate for the *714 first quarterly period shall be ten (10%) percent. Thus, after the first interest payment at ten percent, the interest rate upon which subsequent interest payments were based was pegged to the prime lending rate in Memphis, Tennessee. During the relevant quarters, the prime interest rate in Memphis fluctuated between 7-1/2 percent and 11-1/2 percent. On October 10, 1973, each of the Schaeffer brothers obtained a loan in the amount of $ 394,327 from the Memphis Bank and Trust Company (herein the Bank). The total amount of these loans was the same amount as the principal amount of the Hutton note. As collateral for these loans, petitioner and Joseph assigned the Hutton note to the Bank by endorsing it thusly: Pay to the order of Memphis Bank and Trust Co. /s/ Milton T. Schaeffer /s/ Joseph H. Schaeffer, Jr. The endorsed Hutton note, along with the deed of trust securing such note, was deposited with the Bank on October 10, 1973. Petitioner's loan from the Bank was evidenced by a "Collateral Note" signed by him in favor of the Bank (herein the Bank note). The Bank note contained the following terms: (1) the principal amount of the note was $ 394,327; (2) the note *715 was dated October 10, 1973; (3) the note was payable on January 5, 1974; (4) the interest rate was ten percent; (5) the note refers to the following collateral: "$ 788,654.00 promissory note and trust deed dated October 10, 1973, signed by Chuck Hutton Co."; and (6) the note is signed by petitioner. Petitioner negotiated the Bank note loan directly with the president of the Bank. The Bank note loan transaction was approved by a six-member executive committee of the Bank of which Tom Hutton, president of Hutton Co., was a member. No one at the Bank ever gave petitioner any assurance, either orally or in writing, that the Bank note would be renewed beyond its January 5, 1974, due date. However, petitioner expected to be able to renew such note because of his prior dealings with the Bank. Petitioner was, at the time the Bank note was executed, directly, jointly, and contingently liable to the Bank for a total amount of approximately $ 1,692,267. The total collateral pledged to the Bank to secure petitioner's debts was valued at approximately $ 2,490,000, and the value of the collateral owned by petitioner and Joseph jointly and securing joint debts amounted to approximately $ *716 1,225,000. All notes signed by petitioner in favor of the Bank contained cross-collateral provisions which provided that, if petitioner defaulted on any obligation to the Bank, collateral pledged on that obligation or any other obligation to the Bank could be used to satisfy the defaulted debt. Petitioner's net worth on December 31, 1972, was approximately $ 3,600,000, and it increased between that date and October 10, 1973. Petitioner paid Tennessee income tax on interest income received on the Hutton note as set forth below, but received, under Tennessee law, no offsetting deduction for the interest he paid on the Bank note: Year
Interest Income
Tax Paid
1974
$ 28,249.77
$ 1,694.99
1975
15,542.18
932.53
1976
2,060.00
123.60
Hutton Co. paid off its note generally as outlined in the provisions of the Hutton note. However, the Bank note of petitioner (as well as that of Joseph) was extended in such a fashion that, in essence, the payments on the Bank note were made shortly after roughly equal payments on the Hutton note were received by the Schaeffer brothers. Moreover, in 1973, after he discerned that Joseph was probably going to file for bankruptcy, *717 petitioner directed Hutton Co. to make any future payments on the Hutton note directly to the Bank, and the Bank was instructed to use those payments to liquidate petitioner's and Joseph's liabilities on their respective notes with the Bank. Hutton Co. and the Bank complied with these instructions, sometimes even foregoing the formality of the actual execution of a check by Hutton Co. in favor of the Bank, but rather accomplishing the transfer by mere book entries between an account which the Hutton Co. maintained at the Bank and the loan accounts of petitioner and Joseph. The following is summary of the relevant payments made by Hutton Co., petitioner, and Joseph: Hutton Co. to
Petitioner
Joseph
Petitioner
to
to
Date
And Joseph
Bank
Bank
1/7/74
$ 262,884.73 p
$ 0
$ 0
17,501.60
0
0
1/8/74
0
131,442.36 p
131,442.36 p
0
8,750.80
8,750.80
4/9/74
12,964.50
0
0
4/16/74
0
7,362.89
7,362.89
7/5/74
12,780.95
6,554.11
0
7/8/74
0
0
6,390.48
7/19/74
0
0
379.65
10/9/74
13,252.50
0
0
10/11/74
0
6,626.25
6,626.25
1/6/75
262,884.66 p
0
0
13,396.65
0
0
1/8/75
0
131,442.33 p
131,442.33 p
0
6,698.33
6,698.33
4/7/75
6,481.80
0
0
4/8/75
0
3,168.72
0
4/9/75
0
0
3,240.90
7/9/75
[1] 5,243.42
0
0
7/18/75
0
[1] 2,621.71
[1] 2,621.71
7/22/75
0
799.39
0
9/17/75
n2 68,066.28
[2] 34,033.14
[2] 34,033.14
10/9/75
0
558.57
390.41
1/7/76
[2] 200,000.00 p
[2] 100,000.00 p
[2] 100,000.00 p
[1] 4,120.00
[1] 2,085.76
[1] 2,034.29
1/12/76
0
462.18
0
*718 During 1975, Joseph filed a petition in bankruptcy in the United States District Court for the Western District of Tennessee. The Commissioner filed a proof of claim in that proceeding with respect to Federal income taxes due for 1973. That claim was based upon the Commissioner's contention that Joseph had disposed of his share of the Hutton note in 1973 and, therefore, was taxable in 1973 on the remaining unrecognized gain from the sale of the Southeastern property under section 453(d). The trustee in bankruptcy objected to this determination. The matter was heard by the court on cross-motions for summary judgment, and the court decided the section 453(d) issue in favor of the Commissioner. Bogatin v. United States, an unreported case ( W.D. Tenn. 1978, 45 AFTR 2d par. 80-355, 78-2 USTC par. 9733). Petitioner reported his share of the gain from the sale of the Southeastern property under the provisions of section 453. The Commissioner does not dispute petitioner's contention that the sale initially qualified *719 for installment sale treatment, nor does he raise any subchapter K issue.He merely asserts that petitioner's 1973 transaction with the Bank constituted a distribution, transmission, sale, or other disposition of the Hutton note, and therefore, that the remaining gain realized from the sale of the Southeastern property should be recognized in 1973. OPINION Petitioner and his brother, in effect, sold some real estate in 1973 to Hutton Co., receiving cash and a $ 788,654 promissory note (which was secured by a deed of trust on some land). The principal of this Hutton note was payable in three equal installments due on January 5 of 1974, 1975, and 1976. Interest accrued at 10 percent until the first principal payment and thereafter at the prevailing prime interest rate, and such interest was payable quarterly. The Hutton note was dated October 10, 1973. On the same day, petitioner and Joseph each obtained loans in a face amount equal to their respective one-half shares of the Hutton note, and they secured such loans with a collateral assignment of the Hutton note and the deed of trust securing it. These latter loans were evidenced by Bank notes which required payment of the *720 loans on January 5, 1974, along with interest accrued thereon at 10 percent. Though petitioner, an excellent credit risk, was confident of his ability to obtain an extension on his Bank note should he later desire one, he was given no assurances by anyone at the Bank that the Bank note would in fact be extended. The Bank notes of both petitioner and Joseph were extended in such a fashion that the interest and principal payments on such notes were made, by and large, at the same time and in approximately the same amounts as the Hutton note. Moreover, in 1975 petitioner instructed Hutton Co. to make its payments directly to the Bank, which applied such payments to the outstanding balances of the Bank notes. Petitioner so instructed Hutton Co. because he did not want the payments on the Hutton note to get entwined in Joseph's impending bankruptcy. Respondent contends that petitioner's transaction with the Bank effected a disposition of the Hutton note such that petitioner's share of the theretofore unrecognized gain from the sale of the realty should be recognized in 1973 under the provisions of section 453(d). The pertinent part of *721 section 453, as in effect for the taxable year before us, provided: SEC. 453. INSTALLMENT METHOD. (a) DEALERS IN PERSONAL PROPERTY. (1) IN GENERAL.--Under regulations prescribed by the Secretary or his delegate, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price. (2) TOTAL CONTRACT PRICE.--For purposes of paragraph (1), the total contract price of all sales of personal property on the installment plan includes the amount of carrying charges or interest which is determined with respect to such sales and is added on the books of account of the seller to the established cash selling price of such property. This paragraph shall not apply with respect to sales of personal property under a revolving credit type plan or with respect to sales or other dispositions of property the income from which is, under subsection (b), returned on the basis and in the *722 manner prescribed in paragraph (1). (b) SALES OF REALTY AND CASUAL SALES OF PERSONALTY. (1) GENERAL RULE.--Income from-- (A) a sale or other disposition of real property, or (B) a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year) for a price exceeding $ 1,000, may (under regulations prescribed by the Secretary or his delegate) be returned on the basis and in the manner prescribed in subsection (a). (2) LIMITATION.--Paragraph (1) shall apply-- (A) In the case of a sale or other disposition during a taxable year beginning after December 31, 1953 (whether or not such taxable year ends after the date of enactment of this title), only if in the taxable year of the sale or other disposition-- (i) there are no payments, or (ii) the payments (exclusive of evidences of indebtedness of the purchaser) do not exceed 30 percent of the selling price. (B) In the case of a sale or other disposition during a taxable year beginning before *723 January 1, 1954, only if the income was (by reason of section 44(b) of the Internal Revenue Code of 1939) returnable on the basis and in the manner prescribed in section 44(a) of such code. (3) PURCHASER EVIDENCES OF INDEBTEDNESS PAYABLE ON DEMAND OR READITY TRADABLE.--In applying this subsection, a bond or other evidence of indebtedness which is payable on demand, or which is issued by a corporation or a government or political subdivision thereof (A) with interest coupons attached or in registered form (other than one in registered form which the taxpayer establishes will not be readily tradable in an established securities market), or (B) in any other form designed to render such bond or other evidence of indebtedness readily tradable in an established securities market, shall not be treated as an evidence of indebtedness of the purchaser. (d) GAIN OR LOSS ON DISPOSITION OF INSTALLMENT OBLIGATIONS.-- (1) GENERAL RULE.--If an installment obligation is satisfied at other than its face value *724 or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and-- (A) the amount realized, in the case of satisfaction at other than face value or a sale or exchange, or (B) the fair market value of the obligation at the time of distribution, transmission, or disposition, in the case of the distribution, transmission, or disposition otherwise than by sale or exchange. Any gain or loss so resulting shall be considered as resulting from the sale or exchange of the property in respect of which the installment obligation was received. (2) BASIS OF OBLIGATION.--The basis of an installment obligation shall be the excess of the face value of the obligation over an amount equal to the income which would be returnable were the obligation satisfied in full. Respondent contends that petitioner "sold, or otherwise disposed of" his share of the Hutton note by collaterally assigning it as security for the Bank note. Petitioner contends that he merely pledged the Hutton note as security and that such a pledge does not constitute a sale or other disposition of the installment obligation embodied *725 in the Hutton note. Of course, if petitioner is to prevail, he must shoulder the burden of disproving the Commissioner's presumptively correct deficiency determination. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
The question of whether a transaction such as the one before us constitutes an assignment which will trigger the gain-recognizing language of section 453(d), or a mere pledge which will not, is not a new one before this Court. The following concise exposition of the conceptual framework which we will utilize in deciding this case is found in Town & Country Food Co. v. Commissioner,51 T.C. 1049 (1969): Section 453(d) predicates its application upon a sale or exchange or other disposition of installment obligations. We think it is obvious that a disposition involves the relinquishment of the substantial incidents of ownership of the obligations. It may well be that in some instances involving claimed borrowing arrangements the taxpayer parts with such a substantial portion of his ownership *726 rights in the obligations as to require the conclusion that he has, in effect, sold or otherwise disposed of the obligations. On the other hand, if it is clear that the taxpayer has merely subjected the obligations to a lien for the payment of indebtedness, he does not lose the privilege of reporting the income from the installment method. Thus, we must decide whether petitioner, in spite of the form in which this transaction was cast, parted with such a substantial portion of his ownership rights in the Hutton note as to require the conclusion that he has, in effect, sold or otherwise disposed of the installment obligations embodied therein. Each case of this kind must be decided upon the basis of its particular circumstances. Town & Country Food Co.,supra, at 1057. [2] We conclude that the substance of this transaction comports with its form and, therefore, that petitioner must prevail on this issue. Respondent makes much of the fact that the Hutton note was actually assigned to the Bank, although *727 he does stipulate that such assignment was a "collateral" assignment. However, we have in the past refused to find a disposition of installment obligations even where the notes and conditional sales contracts securing such notes were "transferred, assigned and delivered" to a lender in the same position as the Bank herein. United Surgical Steel Co. v. Commissioner,54 T.C. 1215 (1970). The mere entrustment of collateral with the lender whose debt such collateral secures does not constitute a disposition or sale of such collateral. Respondent also points to the equality of the face amounts of the Hutton note and the sum of the Bank notes as evidence of a disposition of the Hutton notes.However, "there is no basis in law upon which to conclude that merely because the amount borrowed is substantially equal to the face amount of the collateral, the taxpayer has thereby disposed of the collateral." United Surgical Steel Co.,supra at 1228. Moreover, though we do not here say that the two notes must contain any dissimilarities, some are present in the instant case: *728 (1) the interest rates on the two notes could, and did, differ, and (2) the originally contracted maturity dates were different. Respondent discounts the significance of the first above-listed dissimilarity by arguing that it produced a deminimis difference between the amount received and the amount paid. However, the fact that the contracted differences in the interest rates did not produce, in actuality, the potentially great difference between the amount received and the amount paid does not negate the significance of the contracted-for disparity.We must examine this transaction as of the date it occurred when weighing such facts, should they be relevant. That being the case, we are similarly unimpressed by respondent's attempt to prove that these two notes had substantially identical maturity dates. Even if that fact were relevant, respondent has not denied that under the terms of the Bank note it was to come due on January 5, 1974. Granted, the Bank note subsequently was extended in such a manner that the payments on the Hutton note could be used to extinguish petitioner's liability on the Bank note. That alone, however, does not change the terms of the Bank notes *729 as of the day we must inspect it, October 10, 1973. It could be that such extensions prove that the actual terms of the Bank note were not as expressed therein but, rather, were controlled by oral agreements between petitioner and the Bank. However, respondent has not tried to prove such an oral agreement, and petitioner testified that there was no such agreement, assurance, or understanding. Thus, even if substantial identity between the terms of the Hutton note and those of the Bank note tended to prove that the assignment was a sale or disposition, as opposed to a collateral assignment, respondent has not proven such substantial identity between the notes involved herein. For the same reasons, petitioner's instructions to Hutton Co. in 1975, whereby future payments on the Hutton note were made to the Bank to be applied to petitioner's outstanding liability on the Bank note, do not retroactively affect, for purposes of our examination thereof, the contractually dissimilar terms of the notes involed. Again, even if substantial identity of terms of the notes were relevant, respondent has not proven any such identity. On the other hand, there are factors herein which militate *730 in favor of a finding for petitioner. First we would note, as we have in a prior case, that petitioner's structuring of this transaction as a loan, with all the attendant indicia thereof, is a factor which enables us to more easily find that it was in fact a loan. Mathers v. Commissioner,57 T.C. 666 (1972). In that case the taxpayer himself structured the transaction as a discounting transaction. Nowhere in the controlling agreement was there any mention of any loan arrangement or any indication that the notes were to be transferred merely as collateral security. We rightly rejected his later attempt to recharacterize this discounting arrangement as a mere loan. Since the form of the transaction before us supports, rather than contradicts, the argued substance of the transaction, we are more prone to find that the substance of the transaction is as petitioner would have us find it. It is instructive to note that in our last three reported decisions dealing with this issue [3] we have held that the substance of the transaction was indeed as the parties to the transaction *731 had cast it. We are likewise impressed, as was the court in Yancey Bros. Co. v. United States,319 F.Supp. 441 (N.D. Ga. 1970), by the fact that petitioner paid a state income tax on the interest received on the Hutton note, which act exhibits petitioner's belief that he still owned both the Hutton note and the proceeds therefrom. All in all, we are not convinced that petitioner relinquished the substantial incidents of ownership of the Hutton note such that it was sold or disposed of under section 453(d). [4] That being the case, petitioner must prevail, and the Commissioner's attempt to apply the gain-recognition provisions of section 453(d) to the transaction between petitioner and the Bank is erroneous. Concessions having been made, *732 Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
p. -- Principal payments. ↩
1. Hutton Co. check made payable to the Bank ↩
2. Payment accomplished by intrabank transfer of funds--no check.↩
2. Cf. Branham v. Commissioner,51 T.C. 175↩ (1968).
3. Mathers v. Commissioner,57 T.C. 666 (1972); United Surgical Steel Co. v. Commissioner,54 T.C. 1215 (1970); Town & Country Food Co. v. Commissioner,51 T.C. 1049↩ (1969).
4. We are aware that petitioner's brother, Joseph, who litigated this issue before the United States District Court for the Western District of Tennessee, sitting as a bankruptcy court, received a contrary ruling from that court. Bogatin v. United States, an unreported case ( W.D. Tenn. 1978, 45 AFTR 2d par. 80-355, 78-2 USTC par. 9733). However, that case was decided on cross-motions for summary judgment. Since the facts before the district court were limited to those facts stipulated, whereas we had access to different stipulated facts and facts found from evidence adduced at trial, our contrary holding is not necessarily legally inconsistent with the holding of the court in Bogatin,supra.↩